UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-5234 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| PPD, INC., DAVID SIMMONS, JOE BRESS, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| STEPHEN ENSLEY, MARIA TERESA | : **SECURITIES EXCHANGE ACT OF** |
| HILADO, COLIN HILL, JEFFREY B. | : **1934** |
| KINDLER, HUNTER PHILBRICK, ALLEN | : |
| THORPE, and STEPHEN H. WISE, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against PPD, Inc. ("PPD or the "Company") and the members PPD board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of PPD by Thermo Fisher, Inc. ("Thermo Fisher") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Information Statement on Schedule 14C (the "Information Statement") to be filed on May 25, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Information

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Powder Acquisition Sub ("Merger Sub"), a wholly owned subsidiary of Thermo Fisher, will merge with and into PPD with PPD surviving the merger and becoming a wholly owned subsidiary of Thermo Fisher (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each PPD common share issued and outstanding will be converted into the right to receive $47.50 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked PPD stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Information Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Information Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Information Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to PPD stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the wrongs complained herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of PPD common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant David Simmons has served as a member of the Board since May 2012 and is the Company's Chairman of the Board and Chief Executive Officer.

11. Individual Defendant Joe Bress has served as a member of the Board since April 2019.

12. Individual Defendant Stephen Ensley has served as a member of the Board since August 2017.

13. Individual Defendant Maria Teresa Hilado has served as a member of the Board since February 2018.

14. Individual Defendant Colin Hill has served as a member of the Board since October 2017.

15. Individual Defendant Jeffrey B. Kindler has served as a member of the Board since May 2017.

16. Individual Defendant Hunter Philbrick has served as a member of the Board since December 2011.

17. Individual Defendant Allen Thorpe has served as a member of the Board since October 2011.

18. Individual Defendant Stephen H. Wise has served as a member of the Board since December 2011.

19. Defendant PPD is incorporated in Delaware and maintains its principal offices at 929 North Front Street, Wilmington, North Carolina 28401. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "PPD."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

22. PPD, together with its subsidiaries, provides drug development services to the biopharmaceutical industry worldwide. The Company operates through two segments, Clinical Development Services and Laboratory Services. It offers clinical development services, including product development and consulting, early development, Phases II-IV clinical trial management, accelerated enrollment, peri-and post-approval, and medical communications services. The

Company also provides laboratory services comprising bioanalytical, biomarker, vaccine science, good manufacturing practice, and central laboratory services. It serves pharmaceutical, biotechnology, medical device, and government organizations, as well as other industry participants. The Company has a collaboration with Science 37 to design, build, test, implement, and execute digital trials using Science 37's DCT SaaS-based technology platform. PPD was founded in 1985 and is headquartered in Wilmington, North Carolina.

23. On April 15, 2021, PPD and Thermo Fisher jointly announced that they had entered into a proposed transaction:

> WALTHAM, Mass. and WILMINGTON, N.C., April 15, 2021 /PRNewswire/ -- Thermo Fisher Scientific Inc. (NYSE: TMO) ("Thermo Fisher"), the world leader in serving science, and PPD, Inc. (Nasdaq: PPD) ("PPD"), a leading global provider of clinical research services to the pharma and biotech industry, today announced that their boards of directors have approved a definitive agreement under which Thermo Fisher will acquire PPD for $47.50 per share for a total cash purchase price of $17.4 billion plus the assumption of approximately $3.5 billion of net debt. This represents a premium of approximately 24% to the unaffected closing price of PPD's common stock on the Nasdaq as of Tuesday, April 13, 2021, or 32% to the 60-day VWAP inclusive of that date.
>
> PPD provides a broad range of clinical research and laboratory services to enable customers to accelerate innovation and increase drug development productivity. A leader in the growing $50 billion clinical research services industry, PPD has more than 26,000 colleagues operating in nearly 50 countries. In 2020, the company generated revenue of $4.7 billion. Upon close of the transaction, PPD will become part of Thermo Fisher's Laboratory Products and Services Segment.
>
> "Pharma and Biotech is our largest and fastest growing end market, and our customers value us as a strategic partner and an industry leader. The acquisition of PPD is a natural extension for Thermo Fisher and will enable us to provide these customers with important clinical research services and partner with them in new and exciting ways as they move a scientific idea to an approved medicine quickly, reliably and cost effectively," said Marc N. Casper,

chairman, president and chief executive officer, Thermo Fisher Scientific. "Longer term, we plan to continue to invest in and connect the capabilities across the combined company to further help our customers accelerate innovation and drive productivity, while driving further value for our shareholders."

David Simmons, chairman and chief executive officer, PPD, said, "This is a very exciting announcement for our shareholders and will provide customers with an even better opportunity to bring meaningful innovation to the market faster and more efficiently. Thermo Fisher is a world-class company with a very similar culture and values and will provide a great foundation for our colleagues to continue to deliver for our customers and to develop their own skills and careers."

Casper added, "Both companies have complementary mission-driven cultures, and I can't wait to welcome PPD's colleagues from around the world to Thermo Fisher once the transaction is completed."

**Benefits of the Transaction**

**Establishes Thermo Fisher as One of the Global Leaders in the Attractive, High Growth Clinical Research Services Industry**

PPD serves a $50 billion industry forecasted to grow long-term in the mid-single digits, driven by scientific breakthroughs, the continued expected robust funding for drug discovery and the need for strategic suppliers for the pharma and biotech industry to help them bring safe and effective medicines to the patients that need them. PPD has invested significantly in its capabilities and is one of the leading global players providing services to both emerging biotech customers and to all of the top pharma companies in the world.

**Combination Further Enhances Thermo Fisher's Value Proposition for Pharma and Biotech Customers by Adding Highly Complementary Services**

Thermo Fisher is a leading supplier to the pharma and biotech industry, supporting research and development, clinical trials and production. PPD enhances Thermo Fisher's offering, bringing a proven drug development platform, excellent patient recruitment capabilities, strong laboratory services and a complementary reputation for excellent quality and service. These combined capabilities further enhance Thermo Fisher's value proposition to

pharma and biotech customers and allow them to more efficiently access these services, which are key enablers of their success.

**Creates Meaningful Benefits for Customers**

In the near-term, Thermo Fisher's access to key decision makers in pharma and biotech companies will increase the opportunities for PPD to win additional work from existing and new customers as the pandemic has further highlighted the need for these customers to develop strategic relationships with their key suppliers. The combined company's extensive capabilities and knowledge in serving the pharma and biotech industry will enable new solutions for customers that create the potential to reduce the time and cost of the drug development process.

**Delivers Attractive Financial Benefits**

The transaction is expected to be immediately and significantly accretive to Thermo Fisher's adjusted EPS, adding $1.40 in the first 12 months after close. Thermo Fisher expects to realize total synergies of approximately $125 million by year three following close, consisting of approximately $75 million of cost synergies and approximately $50 million of adjusted operating income benefit from revenue-related synergies.

**Approvals and Financing**

The transaction, which is expected to be completed by the end of 2021, is subject to the satisfaction of customary closing conditions, including the receipt of applicable regulatory approvals.

In addition to board approval, shareholders holding in aggregate approximately 60% of the issued and outstanding shares of common stock of PPD have approved the transaction by written consent. No further action by other PPD shareholders is required to approve the transaction.

Thermo Fisher has obtained committed bridge financing with respect to a portion of the purchase price. To fund the transaction, Thermo Fisher intends to use proceeds from debt financing and cash on hand.

**Advisors**

Barclays Capital, Inc. and Morgan Stanley & Co. LLC are serving as financial advisors to Thermo Fisher, and Cravath, Swaine &

Moore LLP and Arnold & Porter Kaye Scholer LLP are serving as legal counsel. For PPD, J.P. Morgan Securities LLC is serving as exclusive financial advisor, while Simpson, Thacher & Bartlett LLP is serving as legal counsel.

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that PPD's stockholders are provided with the material information that has been omitted from the Information Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Information Statement**

25. On May 25, 2021, PPD filed the Information Statement with the SEC in connection with the Proposed Transaction. The Information Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Information Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Information Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning PPD Financial Projections*

26. The Information Statement fails to provide material information concerning financial projections by PPD management and relied upon by J.P. Morgan in its analysis. The Information Statement discloses management-prepared financial projections for the Company which are materially misleading. The Information Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with

forming a view about the stand-alone valuation of the Company. Accordingly, the Information Statement should have, but fails to provide, certain information in the projections that PPD management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Information Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Information Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the

9

measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Information Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Information Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Information Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

31. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Information Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

32. With respect to J.P. Morgan's *Selected Transactions Analysis* for the Company, the Information Statement fails to disclose the individual multiples and metrics for the transactions observed by J.P. Morgan in the analysis.

33. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Information Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates of 3.50% to 4.00%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.50% to 8.50%;

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

(iv) the weighted average cost of capital of the Company; (v) the Company's debt and cash; and (vi) the fully diluted number of the shares of Company Common Stock outstanding.

34. In sum, the omission of the above-referenced information renders statements in the Information Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Information Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Information Statement and the use of their name in the Information Statement, which fails to provide critical information regarding, among other things,

financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Information Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Information Statement. The preparation of a Information Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Information Statement or failing to notice the material omissions in the Information Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Information Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of PPD within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of PPD, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Information Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PPD, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Information Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PPD, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Information Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Information Statement.

45. In addition, as the Information Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Information Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Information Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 11, 2021            **MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*